UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
AT ERIE

| | |
|---|---|
| ERIC BRITTON, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 1:17-cv-56 Erie |
| | ) |
| v. | ) |
| | ) ORDER GRANTING DEFENDANT'S |
| | ) SUMMARY JUDGMENT MOTION |
| OIL CITY AREA SCHOOL DISTRICT, | ) |
| | ) |
| Defendant. | ) |

## I. INTRODUCTION

Plaintiff Eric Britton (hereinafter "Plaintiff") brought discrimination and retaliatory discharge claims under the Americans With Disabilities Act ("ADA") and Pennsylvania Human Relations Act ("PHRA") against his former employer Oil City Area School District ("the District"). *See* First Amended Complaint, Dkt. No. 19. The District filed the instant motion for summary judgment, seeking to dismiss all of Plaintiff's claims. Dkt. No. 26. In response to the motion, Plaintiff concedes that the District is entitled to summary judgment on the discrimination claims, but argues that a dispute of material fact exists as to the retaliation claims, and thus, the District's motion must be denied as to those claims. Dkt. No. 31.

Having reviewed the motion and supporting documents, the opposition thereto and supporting documents, the record of the case, and the relevant legal authority, the Court will grant the motion. The reasoning for the Court's decision follows.

## II. FACTUAL BACKGROUND[1]

### A. Plaintiff's Workers' Compensation and EEOC Claims

Plaintiff was hired by the District in May 2005 as a maintenance technologist and computer technician. He sustained a work-related injury on November 3, 2006 and received wage loss and medical benefits for the injury until March 12, 2007, when he returned to work at his pre-injury job without restrictions.

Plaintiff sustained a second injury on June 26, 2015. At first he claimed that the injury is a new, work-related injury, but later he claimed that the injury is a related to the November 3, 2006 injury. He further claims that this injury rendered him disabled and he is no longer able to work (as of July 21, 2015). He sought wage loss and medical benefits for the June 26 injury, but the District contested that the injury is work-related. Its workers' compensation insurer denied coverage.

On August 14, 2015, Plaintiff filed a workers' compensation claim with the Pennsylvania Department of Labor and Industry. Four days later, on August 18, 2015, he also filed two charges of discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC eventually dismissed the discrimination charges and in the spring of 2016, Plaintiff and the District settled all wage loss and medical benefits claims related to the November 3, 2006 and July 26, 2015 injuries.

### B. Plaintiff's Termination

In December 2014, the Pennsylvania Legislature passed legislation requiring that all current employees of Pennsylvania school districts obtain the following three background clearances: (1) Department of Human Services Child Abuse History Clearance; (2) Pennsylvania

---

[1] The following factual allegations are undisputed by the parties, unless otherwise noted. See Dkt. Nos. 28, 32-33, 35, 37-38, and 41.

State Police Request for Criminal Records Check; and (3) Federal Criminal History Record Information on or before December 31, 2015. *See* Pennsylvania Child Protective Services Law of 2014 (Act 168) (24 P.S. § 1-111.1). The parties agree that it was the employee's responsibility to obtain the background clearances by the end of 2015.

Shirley McLaughlin, in her capacity as the Secretary to the Superintendent of the District was responsible for verifying that the District received timely submissions of the required background checks for each of the District employees. Dkt. No. 37-1 at A.00680, ¶ 2. Ms. McLaughlin claims that during the 2015 calendar year, "employees of the [District] were sent multiple reminders that their background clearances must be received by the District by the end of 2015 in order for the employees to remain employed by the District." *Id*. at ¶ 3. Plaintiff admits that he received an email dated March 13, 2015 from Ms. McLaughlin in which she informed him that he was responsible for obtaining and submitting all three clearances to the District. Dkt. No. 32 at ¶ 30. Plaintiff also concedes that he received a second email from the District on May 27, 2015, reminding him of the requirement. Dkt. No. 32 at ¶ 31. Likewise, Plaintiff acknowledges that he received a third email dated July 2, 2015 from Susan Fisher (another District employee) reminding him that he needed to submit his required clearances.

The District still had not received Plaintiff's background clearances as of the beginning of December 2015, so on December 2, 2015, Ms. McLaughlin sent a letter to Plaintiff stating in relevant part that the clearances needed be turned in on for before December 23, 2015. Dkt. No. 34-1, at 37. The letter further stated: "If we do not have updated clearances on file for you, you will not be able to continue working in the district." *Id*. The letter included instructions on how to obtain the required clearances. Plaintiff acknowledges that he received this letter. Dkt. No. 32 at ¶ 33.

Finally, on December 9, 2015, Patrick Gavin, the District Superintendent, sent Plaintiff a letter warning him that he would be terminated if his clearances were not received by December 23, 2015. The letter also included an instruction sheet on how to obtain the clearances. Dkt. No. 34-1 at 38. Once again, Plaintiff admits that he received this letter.

Plaintiff applied for his background checks online on December 12, 2015. On December 21, 2015, he sent Ms. McLaughlin an email from his school email account in which he enclosed two of the three required background clearances, but stated that the third background clearance "is still under review and will be sent when [he has] results." Dkt. No. 28, ¶ 42, Appendix, Vol. 1 at A257; Dkt. No. 32, ¶ 42. The District claims that Plaintiff did not send the third background clearance by December 23, December 31, or, indeed, ever. Plaintiff counters that he sent the final background clearance to Ms. McLaughlin (again via an email from his school email account) before December 31, 2015.

Plaintiff's testimony as to when, exactly, he emailed the final clearance to Ms. McLaughlin has changed several times. In a recorded interview with a representative of the Pennsylvania Office of Unemployment in September 2016, Plaintiff represented that he sent the third background clearance on December 9, 2015. Dkt. No. 37-1 at A.00707. However, the First Amended Complaint alleges that Plaintiff emailed the clearance to Ms. McLaughlin on December 22, 2015. Dkt. No. 19 at ¶ 15. Finally, during his deposition for this case, Plaintiff testified that he received the third clearance from the Pennsylvania State Police Department via US mail on December 28, 2015 and emailed a copy of it to Ms. McLaughlin on that same day. Dkt. No. 28, ¶ 46, Appendix, Vol. 1 at A130-134.

Thereafter, on January 4, 2016, the District terminated Plaintiff's employment. It cited Plaintiff's alleged failure to submit all three background clearances before the end of 2015 as the

4

reason for his termination. Plaintiff instituted this action against the District in February 2017 and the First Amended Complaint was filed in June that year. Dkt. Nos. 1, 19. The parties proceeded to discovery and the instant motion for summary judgment was filed in April 2018. The motion is now ripe and ready for this Court's review.

### III. DISCUSSION

#### A. Standard of Review

Summary judgment is appropriate if, drawing all reasonable inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

#### B. Analysis

As stated above, Plaintiff brought four claims against the District, two claims for discrimination under the ADA and PHRA and two claims for retaliation under the ADA and PHRA. The District moved for summary judgment as to all four claims. In his opposition to the motion, Plaintiff conceded that the District is entitled to summary judgment as to the two discrimination claims, but maintains that a dispute of material fact exists as to the retaliation claims, and therefore, argues that the motion must be denied as to those claims. Therefore, this decision only addresses Plaintiff's claims for retaliation pursuant to the ADA and PHRA.

##### 1. Plaintiff States a Prima Facie Case for Retaliation

The ADA contains the following prohibition against retaliation:

> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.

42 U.S.C. § 12203(a).[2] A claim for retaliation under the ADA is analyzed under the familiar burden shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981). Under this framework, a plaintiff bears the initial burden of establishing a prima facie case of retaliation. *McDonnell Douglas*, 411 U.S. at 802. If the plaintiff successfully establishes a prima facie case, the burden shifts to the employer to articulate some legitimate non-retaliatory reason for the adverse employment action. *Id*. Once the employer carries its burden, the burden of production shifts to the plaintiff to show "both that the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006) (quoting *Krouse v. Am. Sterlizer Co*., 126 F.3d 499, 500-01 (3d Cir. 1997)). To survive a motion for summary judgment in the employer's favor, the plaintiff must produce some evidence from which a jury could reasonably reach these conclusions." *Id*. (citing *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

Here, the District charges that Plaintiff cannot establish a prima facie case of retaliation. In order to establish a prima facie case, Plaintiff must prove the following elements: (1) he engaged in a protected activity; (2) the District took an adverse employment action against him; and (3) there was a causal connection between Plaintiff's protected activity and the adverse employment action. *Nelson v. Upsala College*, 51 F.3d 383, 386 (3d Cir. 1995). The District does not dispute that Plaintiff engaged in a protected activity (*i.e*., filing the administrative

---

[2] The PHRA contains a substantially similar anti-retaliation provision. *See* 43 Pa. Stat. § 955(d). The Third Circuit has held that the "PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently." *Fogleman v. Mercy Hosp., Inc*., 283 F.3d 561, 567 (3d Cir. 2002) (citation omitted). The District claims "there is nothing in the language of" the relevant PHRA provision and Plaintiff does not object. Dkt. No. 27 at 14, n. 5. Therefore, the Court will apply to Plaintiff's PHRA retaliation claim the same federal standard applicable to his ADA retaliation claim.

claims with the EEOC in August 2015), nor does the District dispute that Plaintiff suffered an adverse employment action (*i.e*. he was fired). However, the District disputes Plaintiff's ability to establish a causal connection between his EEOC claims and his termination.

To establish the requisite causal connection, Plaintiff must prove either: (1) an unusually suggestive temporal proximity between the protected activity and the alleged retaliatory action, or (2) an intervening pattern of antagonism or other evidence of retaliatory animus coupled with timing to establish a causal link. *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Plaintiff concedes that he cannot establish a causal link through temporal proximity between his EEOC filing and his termination. Dkt. No. 31 at 3-4. He further concedes that there is no evidence of a pattern of antagonism by the District.[3] *Id*. Instead, he argues that in absence of such proof, he may show from the evidence in the record as a whole that the trier of fact should infer causation. *Id*. at 4-5.

Plaintiff is correct that the Third Circuit has cautioned that a reviewing court must not take "too restrictive [of] a view of the type of evidence that can be considered probative of [a] causal link." *Farrell v. Planters Lifesavers, Co*., 206 F.3d 271, 281 (3d Cir. 2000). Rather, the Third Circuit instructed, the plaintiff can establish a causal connection by citing to other record evidence. *Id*. Thus, this Court considers the evidence to which Plaintiff cites.

First, Plaintiff points out that he has "consistently maintained that he provided the [District] with [his] clearance[s] prior to the December 31, 2015 deadline." Dkt. No. 31 at 5. He argues that this is sufficient to create a dispute of material fact rendering summary judgment inappropriate because this Court is required to draw "all inferences" in his favor in deciding this

---

[3] Plaintiff argues that the reason he cannot demonstrate either of the typical methods for establishing a causal connection is because he was disabled and off-work from July 21, 2015 through his termination. Thus, Plaintiff argues, "he was not present at the workplace to antagonize or harass, and the [District] could hardly terminate an employee who was absent on approved unpaid medical leave." Dkt. No. 31 at 4.

7

motion. Dkt. No. 31 at 7. Plaintiff misstates the law. This Court is not required to draw *all* inferences in the non-moving party's favor when deciding a summary judgment motion; rather, this Court must draw all *reasonable* inferences in the non-moving party's favor. *See Resco Products, Inc. v. Bosai Minerals Group, Co., Ltd.*, 158 F. Supp. 3d 406, 417 (W.D. Pa. 2016) (in deciding a summary judgment motion, a court must "draw all *reasonable* inferences, and resolve all doubts, in favor of the nonmoving party") (emphasis added).

Plaintiff claims that he submitted all of the clearances by the end of 2015, but as noted above, the exact date on which he claims to have submitted the third clearance has changed multiple times throughout this litigation. Plaintiff asserts that this inconsistency is due to either inaccurate and/or incomplete representations of his statements. For instance, he claims that the recording of his interview with the representative of the Pennsylvania Office of Unemployment in September 2016 in which he claimed that he sent the third clearance on December 9, 2015 is inaccurate and incomplete. Dkt. No. 28, Appendix, Vol. 1, A45-46.

Likewise, he asserts that the First Amended Complaint's allegation that he emailed the clearance to Ms. McLaughlin on December 22, 2015 is an error. *Id*. at A106. Indeed, Plaintiff's counsel now asserts in the opposition to the instant motion that Plaintiff must have been mistaken when he testified at his deposition that he emailed the final clearance to Ms. McLaughlin on December 28, 2015. Counsel argues that his client is not sure exactly when he emailed Ms. McLaughlin, but he knows it was before January 1, 2016. Dkt. No. 31 at 10. This assertion is in response deposition testimony from Corporal Bradley Timbrell (the Supervisor for the Criminal Records Section of the Pennsylvania State Police). Dkt. No. 28-2, Appendix Vol. II at A460. Corporal Timbrell testified that it was impossible for Plaintiff to have emailed a copy of the third clearance to Ms. McLaughlin on December 28, 2015, as Plaintiff alleged in his

deposition, because the Police Department did not complete the third background check until December 28, at which point it was mailed, via the U.S. postal service, to Plaintiff. *Id*. at A497-498. In the face of this evidence Plaintiff's counsel now claims that his client must have sent the email sometime after December 28, 2015 but certainly before January 1, 2016.[4]

Plaintiff further alleges that the day he received his termination letter (January 4, 2016), he attempted to print a copy of the email he allegedly sent to Ms. McLaughlin in which he claims he forwarded the third background clearance. He claims he was not able to print a copy of the alleged email because his school email account had been shut down (*i.e.*, as of January 4, 2016). However, the District presents evidence, again in the form of sworn testimony, that Plaintiff's school email account was not closed until January 20, 2016. Dkt. No. 37-1 at A690, ¶ 6. The District also produced an index of all emails sent from and received on Plaintiff's school email account and there is no email from Plaintiff to Ms. McLaughlin on December 28, 2015 or any other day until the account was closed on January 20. *Id*. at A689, ¶ 5.

A trier of fact could look at these inconsistencies in Plaintiff's testimony and reasonable conclude that Plaintiff is simply changing his story whenever he is presented with evidence that tends to show that his statements are false. Nevertheless, a very narrow reading of the record evidence allows for the possibility that Plaintiff received the final background clearance on December 29-31, 2015 and emailed the document to the District before the end of the year. Ultimately, this is a credibility issue: either Plaintiff is telling the truth, the District employees are not, and their documents are fabricated, or Plaintiff is playing fast with the truth. However, it

---

[4] The Court notes that this argument is simply Plaintiff's counsel's interpretation of his client's deposition testimony and has not been adopted by Plaintiff by way of affidavit or other supporting evidence. Of course, it goes without saying that the arguments of counsel are not evidence and do not create issues of material fact capable of defeating an otherwise valid motion for summary judgment. *Smith v. Mack Trucks*, 505 F.2d 1248, 1249 (9th Cir. 1974) ("Legal memoranda and oral argument, in the summary judgment context, are not evidence, and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment."); *Post v. St. Paul Travelers Ins. C*o., 629 F. Supp. 2d 477, 480 n. 4 (E.D. Pa. 2009) (same).

is not in this Court's purview to assess credibility at this stage of the litigation. *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 643 n. 3 (3d Cir. 1998) (quoting *Fuentes*, 32 F.3d at 762 n.1) (stating that a court must not engage in credibility determinations at the summary judgment stage). Thus, this Court concludes that Plaintiff has established a prima facie case of retaliation.

### 2. Plaintiff Failed to Adduce Any Legitimate Evidence from which a Trier of Fact Could Reasonably Conclude that the District's Pro-offered Reason for Firing Plaintiff Is False

Having determined that Plaintiff stated a prima facie claim for retaliation under the ADA and PHRA, the burden now shifts to the District to articulate a legitimate, non-discriminatory reason for its decision to terminate Plaintiff. *McDonnell Douglas*, 411 U.S. at 802. The District contends that it fired Plaintiff because he failed to submit all three background clearances by the end of 2015. In other words, Plaintiff allegedly did not satisfy all of the perquisites required to remain employed by the District. This is a legitimate, non-discriminatory reason for terminating Plaintiff, thus the burden returns to Plaintiff to show that the District's stated reason for termination was merely a pretext for retaliation. *Id*. at 804. Plaintiff must now point to evidence that: "1) casts sufficient doubt upon each of the legitimate reasons proffered by the defendant so that a factfinder could reasonably conclude that each reason was a fabrication;" or 2) permits the factfinder to reasonably infer "that discrimination was more likely than not a motivating or determinative cause of the adverse employment action." *Fuentes*, 32 F.3d at 762.

Plaintiff argues that the District's reasoning for terminating must be pretextual for three reasons: (1) the District did not fired other employees who failed to submit the required clearances by the end of 2015, (2) the District shortened the deadline by which Plaintiff needed to submit his clearances to December 23, 2015 only for him and no other employees, and (3)

Plaintiff did not have to complete the clearances because he would not have come into contact with students. The Court will address each argument in turn.

Plaintiff claims that his union representative, Rick Downing, informed him that several District employees were allowed to submit the required background clearances after December 31, 2015 and continue their employment with the District. Dkt. No. 34-1 at 96. He further claims that Mr. Downing specifically told him that Scott Walter, another District maintenance employee, submitted his clearances after the end of 2015 and is still employed by the District. Plaintiff did not submit a declaration from Mr. Downing nor any other collaborating evidence in making this argument. Rather, he simply relies on his deposition testimony in which he repeats what Mr. Downing allegedly told him.

The District counters Plaintiff's allegation by submitting the affidavit of Ms. McLaughlin in which she states that it is her job to "verif[y] the timely submission to the District of [the three background clearances] by all employees of the [District]." *See* Dkt. No. 31-1 at A.0068, Affidavit of Shirley D. McLaughlin dated May 8, 2018 at ¶ 2. She also states that during "the 2015 calendar year, employees of the [District] were sent multiple reminders that their background clearances must be received by the District by the end of 2015 in order for the employees to remain employed by the District." *Id*. at ¶ 3. She further avers that "[n]o employee of the [District] was permitted to submit any background clearance after December 31, 2015." Id. at ¶ 6.

In addition, the District claims that it did not employ anyone by the name of Scott Walter in 2015, but it did employ someone named Scott Waters who worked in the maintenance department. In her affidavit, Ms. McLaughlin affirms that "[a]ll three of Scott Waters' background clearances were submitted by Mr. Waters to the District prior to December 31,

2015." *Id*. at ¶ 5. Copies of all three of Mr. Water's background clearances, each of which was issued before the end of 2015 (August 5, 2015 (FBI), October 29, 2015 (PA Criminal Check), and November 18, 2015 (PA Child Abuse Check), are attached as exhibits to Ms. McLaughlin's affidavit. *Id*. at A.00686-88.

  The Court concludes that no factfinder could reasonably conclude that the District allowed other employees to submit their clearances after the end of 2015 and remain employed. Plaintiff presents no evidence to counter the sworn testimony of Ms. McLaughlin other than relying on his own deposition testimony in which he claims Mr. Downing told him that some employees were allowed to do so. This inadmissible hearsay, without more, is insufficient to cast reasonable doubt on the legitimacy of the District's proffered reason for terminating Plaintiff. *Pamintuan v. Nanticoke Memorial Hospital*, 192 F.3d 378, 388 (3d Cir. 1999); *see also Bender v. Norfolk Southern Corp*., 994 F. Supp. 2d 593, 599 (M.D. Pa. 2014) ("Although evidence may be considered in a *form* which is inadmissible at trial, the *content* of the evidence must be capable of admission at trial.") (emphasis in original).

  Next, Plaintiff argues that Mr. Gavin, the School Superintendent, "shortened" the December 31, 2015 "deadline to December 23, 2015 in letters sent only to Plaintiff." Dkt. No. 31 at 6. Plaintiff is referencing the December 2 and 9, 2015 letters written by Ms. McLaughlin and Mr. Gavin, respectively, in which they reminded him that the deadline by which to submit the background checks was quickly approaching and requested that he submit the required documents by December 23, 2015. Dkt. No. 28-1, Appendix Vol. 1 at A255-256. Plaintiff suggests that because the two letters were only addressed to him, he must be the only employee for which the District shortened the deadline. Plaintiff is mistaken. The District sent similar letters with the same December 23, 2015 deadline to at least one other employee. *See* Dkt. No.

12

37-1 at A.00682-683 (correspondence dated December 2 and December 9, 2015 to Mr. Waters in which he is told that his "clearances need to be turned in no later than Wednesday, December 23, 2015" or "[he] will not be able to continue working in the [D]istrict."). Once again, this Court concludes that Plaintiff's unsubstantiated allegation is insufficient to cast reasonable doubt on the legitimacy of the District's proffered reason for terminating Plaintiff, particularly in light of the District's documentation that directly disproves Plaintiff's allegation.

Lastly, Plaintiff argues that the District's proffered reason for terminating him must be pretextual because "the clearances were necessary for anyone who [would] have direct contact with students" and given that he was "on medical leave as of December 31, 2015 with no definite date set for his return to work" it was "highly unlikely that [he] would have any contact with students." Dkt. No. 31 at 6-7. At its essence, Plaintiff is asking the Court to second guess the District's decision to require all employees, whether they are on medical leave or not, to submit background checks, something this Court is not at liberty to do. The Third Circuit has made clear that "an employer may have any reason or no reason for discharging an employee so long as it is not a discriminatory reason." *Brewer v. Quaker State Oil Refining Corp*, 72 F.3d 326, 332 (3d Cir. 1995) (*quoting McCoy v. WGB Continental Broadcasting Co*., 957 F.2d 368, 373 (7th Cir. 1992) ("We do not sit as a super-personnel department that reexamines an entity's business decisions. No matter how medieval a firm's practices, no matter how high-handed its decisional process, no matter how mistaken the firm's managers, the ADEA does not interfere. Rather, our inquiry is limited to whether the employer gave an honest explanation of its behavior.")); *see also Rojas v. Florida*, 285 F.3d 1339, 1342 (11th Cir. 2002) ("We are not interested in whether the conclusion is a correct one, but whether it is an honest one.... We are not in the business of

adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").

Thus, Plaintiff has not present sufficient evidence to establish that a genuine issue of material fact exists on the issue of pretext. The District's motion for summary judgment must be granted.

## IV. CONCLUSION

Based on the foregoing reasons, the District's motion for summary judgment [Dkt. No. 26] is HEREBY GRANTED and this case is DISMISSED.

Dated this 7th day of September, 2018.

_Barbara J. Rothstein_
Barbara Jacobs Rothstein
U.S. District Court Judge